IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM ANTHONY SMITH, <br><br> Defendant. | Case No.  24-cv-11626 <br> Hon. Susan K. DeClercq <br><br> Stipulated Preliminary Injunction Pursuant to 18 U.S.C. § 1345 |

### STIPULATED PRELIMINARY INJUNCTION EXTENDING THE ASSET FREEZE

The United States of America, together with Defendant William Anthony Smith, the Smith Entities identified below, and intervenor Detroit Riverfront Conservancy, all by and through undersigned counsel, submit this Preliminary Injunction for immediate entry.

Before the Court is the Government's Emergency *Ex Parte* Motion for a Temporary Restraining Order and Order to Show Cause ("TRO Motion")—which sought a preliminary injunction, in addition to a TRO.  ECF No. 3.  In light of the parties' stipulations, Mr. Smith's guilty plea, Federal Rule of Civil Procedure 65, and the record in this case, the Court **GRANTS** the Motion and enters this Stipulated Preliminary Injunction prohibiting any person from transferring or

disposing of Defendant William Anthony Smith's assets (to include the assets of his corporate entities specified below) up to a total value of $39.3 million dollars, with the exceptions/limitations described below.

## I.     Findings

In the related criminal matter, Mr. Smith has pled guilty to wire fraud and money laundering.  *United States v. William A. Smith*, 24-cr-20532, ECF 22 (Plea Agreement).  The Court finds that the Government has thus exceeded the standard of establishing by a preponderance of the evidence that Defendant William A. Smith has committed violations of criminal statutes that are predicates for Section 1345 injunctive relief: 18 U.S.C. § 1343 (Wire Fraud), and 1956 (Concealment Money Laundering), with total proceeds of these offenses amounting to more than $39,300,000 dollars.  *See* 18 U.S.C. § 1345(a)(1), (a)(2), and (b).

The Court finds, pursuant to 18 U.S.C. § 1345, that the Government has a strong likelihood of establishing by a preponderance of the evidence that before entry of the original asset freeze, Defendant William A. Smith was alienating or disposing of property, and intended to alienate or dispose of property obtained in whole or in part in violation of the criminal statutes listed in 18 U.S.C. § 1345(a)(1) and (2), including transferring assets to family members or his corporate entities for nominal amounts, and attempting to sell real estate and his yacht to third parties.

The Court finds that the Government has a strong likelihood of establishing that the loss of more than $39.3 million dollars[1]—and their unavailability for restitution and forfeiture—is a "continuing and substantial injury" to the United States, the Detroit Riverfront Conservancy, Comerica Bank, and the Conservancy's donors and financial partners within the meaning of Section 1345(b), which the Court is authorized to prevent pursuant to Section 1345(a)(2) and (b).  In light of the evidence shown, and Smith's ongoing dissipation of criminal proceeds, the Court is authorized to restrain "any person" from dissipating any property obtained by the underlying offenses, "or property of equivalent value." 18 U.S.C. § 1345(a)(2)(B)(i).

The Court finds that Defendant William A. Smith's assets, funds, or other property up to a total value of $39,300,000 constitute property obtained as a result of banking law violations (as defined in 18 U.S.C. § 3322) *or* property of equivalent value, within the meaning of 18 U.S.C. § 1345(a)(2).

The Court finds that there is a strong likelihood that the Government will establish by a preponderance of the evidence that (1) Defendant is using the Smith Entities listed below as alter egos of himself, as nominees in transactions designed

---

[1] Although Mr. Smith has pled guilty to fraud amounting to "at least $44.3 million," fraud totaling at least $39.3 million is the amount named in the original TRO Motion, ECF 3 at PageID.49, and is more than sufficient to freeze all known Smith Assets.

3

to hide assets from his victims and law enforcement, as vehicles for moving fraud and money-laundering proceeds, and as vehicles for fraudulent transfers; and (2) that the assets of the Smith Entities are therefore property of Smith himself and/or subject to equitable restraint for the protection of the interests of Smith's victims and the United States, including their interests in restitution and forfeiture.

The Court finds that there is good cause to believe that alternative means of service are warranted, to permit swift notice of this Stipulated Preliminary Injunction.

Finally, the Court finds—to the extent that the law requires such a finding—that the traditional factors governing issuance of a TRO or preliminary injunction favor granting this Injunction, and that the Court has authority to issue it under 18 U.S.C. § 1345 and its own equitable authority.  The public interest in preserving assets for victim restitution and forfeiture of unlawful proceeds would be served by granting this Injunction.  Any potential harm to Defendant and his businesses is ameliorated by the exceptions to the asset freeze listed below and outweighed by the strong likelihood of the Government's success on the merits.  And Smith's prior attempts to dissipate his alleged criminal proceeds—and property of equivalent value—poses a strong likelihood of irreparable harm.

The Court therefore **ORDERS** the following relief:

    **II.**    **Order Freezing Smith's Assets**

    a)    The Court hereby **PROHIBITS** any person from withdrawing, transferring, removing, dissipating, or disposing of Defendant William A. Smith's assets, funds, or other property up to a total value of $39,300,000, subject to the exceptions listed in paragraph (i) below.

    b)    As used in this Injunction, the term "**any person**" means any individual or entity who receives actual notice of this injunction by personal service or otherwise, including but not limited to financial institutions, Defendant himself, his agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with any of them (as well as any LLCs under Defendant's ownership, direction or control, including the Smith Entities listed below, and their officers, directors, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them).

    c)    As used in this Injunction, the terms "**withdrawing, transferring, removing, dissipating, or disposing**" have their ordinary and reasonable meaning, including but not limited to a prohibition on any movement of or actions to reduce the value of the relevant property. The Court specifically includes in this definition, and thus prohibits: (1) *equity-stripping* (creating, drawing down, or

using existing or created lines of credit or loans against restrained property), (2) *asset-shielding* via the creation or use of any corporate entities or trusts to hold the restrained property, and (3) *transferring* the restrained property in any manner, to include transferring restrained money between accounts already owned by Smith or any entity or person associated with him, or transferring funds overseas.

      d)      **Financial Institutions**: upon receiving notice of this injunction, any financial institution receiving it shall freeze any of Defendant William A. Smith's assets, funds, or other property up to a total value of $39,300,000—as defined in paragraph (f) and related paragraphs—including any checking, saving, retirement, credit, or investment account, and refuse to accept any withdrawal or transfer request, and inform the relevant federal law enforcement personnel of the accounts and balances so frozen. In accomplishing service on financial institutions, the FBI may disclose Smith's social security number to identify his accounts.

      e)      As used in this Injunction, the term "Defendant William A. Smith's assets, funds, or other property up to a total value of $39,300,000" means all of Defendant's property interests, real or personal, including but not limited to any assets, funds, or other property held by or under the direct control of Defendant and/or the Smith Entities, whether held in any of their names or for their direct or indirect beneficial interests, or subject to their direct or indirect control, wherever located or by whomever held, and whether acquired before or after institution of

6

this action, with total equitable value (after subtraction for outstanding mortgages, liens, or other debts) not to exceed $39.3 million. All such assets are FROZEN, pursuant to paragraph (a) above.

    f)    As used in this Injunction, the term "Smith Entities" are corporate entities that Defendant appears to own, control, and/or use to hide assets, which as of this Injunction is limited to the following:

1. Joseph Group & Associates LLC
2. William Smith & Associates LLC
3. First Round Management LLC
4. Bleu Rose Investments LLC
5. Biltmore Development Group, LLC
6. Biltmore Records LLC
7. The YBE Group LLC
8. YBE Investments LLC
9. YBE Food Group LLC
10. YBE Property Group LLC
11. YBE Services Group LLC
12. YBE Tobacco Group, LLC
13. Alter Ego Properties LLC
14. Biltmore Publishing Group, LLC
15. Biltmore Entertainment Group, LLC
16. 48235 Properties, LLC
17. Ross Drive, LLC

    g)    Defendant Smith and the Smith Entities are hereby specifically enjoined from alienating or disposing of any property obtained as a result of the bank fraud, wire fraud, or money laundering violations alleged in this suit or charged in the corresponding criminal case; or property which is traceable to such violations; or property of equivalent value; up to a total amount of $39,300,000.

7

h) This Injunction specifically applies to any accounts bearing William Anthony Smith as signatory(s) or the Smith Entities as business name(s), including checking accounts, savings accounts, retirement or investment accounts, loans, and lines of credit (including credit cards), wherever held, including but not limited to the following financial institutions/entities:

1. Bank of America
2. Citizens Bank
3. JP Morgan Chase Bank
4. Comerica Bank
5. U.S. Bank
6. American Express Co.
7. Mastercard Inc.
8. SS&C Technologies, Inc and SS&C Fund Services.

This Injunction also specifically applies to the following assets, which are included in the definition of "Defendant William A. Smith's assets, funds, or other property":

1. TWO (2) 2021 CAN-AM MOTORCYCLES
2. ONE (1) 2021 36' CRUISERS 35 EXPRESS YACHT
3. Proceeds from the sale of 880 E. M.L. KING DR, IDLEWILD, MI.[2]
4. 1977 WOODBRIDGE, DETROIT, MI.[3]
5. 2087 HOLTZ LANE, ATLANTA, GA 30318-9304
6. 6405 PENROD, DETROIT, MI.

---

[2] The parties' separate stipulation regarding this property remains undisturbed.
[3] The parties anticipate submitting a stipulation to finalize the sale of this asset.

7. 11739 HEYDEN, DETROIT, MI.
8. 11914 DEEPWATER RIDGE WAY, CYPRESS, TX 77433.
9. 12709 CLOVERLAWN, DETROIT, MI.
10. 14026 MARK TWAIN, DETROIT, MI.
11. 15791 MURRAY HILL, DETROIT, MI.
12. 16500 BILTMORE, DETROIT, MI.
13. 16510 BILTMORE, DETROIT, MI.
14. 16527 BILTMORE, DETROIT, MI.
15. 16700 BILTMORE, DETROIT, MI.
16. 16717 RUTHERFORD, DETROIT, MI.
17. 17125 W. MCNICHOLS, DETROIT, MI.
18. 17207 W. MCNICHOLS, DETROIT, MI.
19. 18901 W. MCNICHOLS, DETROIT, MI.
20. 18921 W. MCNICHOLS, DETROIT, MI.
21. 21291 EQUESTRIAN, NORTHVILLE, MI.
22. PEDREGAL ONE CONDOMINIUMS, UNIT 203, LOS CABOS, BAJA CALIFORNIA SUR, MEXICO (and the proceeds of any sale thereof).
23. 18966 SUSSEX, DETROIT MI 48235.
24. The assets associated with Duo Restaurant and Lounge, including those located at 29555 Northwestern Hwy, Southfield, Michigan[4]

i) **Exceptions/Limitations:** Pursuant to the request process outlined below, the Court excepts from the asset freeze **(1)** necessary and reasonable living expenses, as detailed in paragraph j below; **(2)** necessary and reasonable expenses of any ongoing, legitimate business operations; and **(3)** funds necessary and reasonable to pay Smith's counsel of choice in his criminal case, pursuant to *Luis v. United States*, 578 U.S. 5, 18 (2016) (untainted funds) and/or *United States v. Monsanto*,

---

[4] The parties' separate stipulation regarding this property remains undisturbed, and the parties anticipate submitting a stipulation to finalize the sale of these assets.

9

491 U.S. 600 (1989) and its progeny (tainted funds); *see also United States v. Jones,* 160 F.3d 641 (10th Cir. 1998); *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). Furthermore, **(4)** any party—to include the Smith Entities, and Defendant's family members—may petition the Court for relief from this Injunction. **Exceptions/Limitations Motion Process:** Requests for release of funds pursuant to these exceptions will be granted only upon good cause shown by motion or application to the Court with notice to and an opportunity for the United States and the Detroit Riverfront Conservancy to be heard. Any such motion or application (including for attorney fees) shall follow the briefing schedule set by Local Rule 7.1(e). **(5)** This asset freeze shall not operate to prevent the execution of any search or seizure warrant by the United States. **(6) Controlled Sales:** This asset freeze shall not be construed to prohibit the listing of Smith's assets for sale—via arms-length transactions for fair-market value, with proceeds preserved to the benefit of victims—with ultimate transfer subject to approval by the Court. All such listings shall be disclosed to the United States Attorney's Office (USAO), and the terms of any sale presented to the USAO for approval, with the USAO to submit such terms to the Court for final approval. Upon closing of any such transaction, unless otherwise ordered by the Court, the net proceeds shall be made payable to the United States Marshals Service and reference "Case No. 24-cv-11626." The funds shall be held in the Department of Justice Seized Asset Deposit

Fund pending further proceedings in the civil or criminal cases regarding Mr. Smith.

j) **Limited Access for Necessary and Reasonable Living Expenses:** The parties agree that Smith should have access to **Three Thousand Four Hundred Twenty-One Dollars and 00/100 ($3,421.00)** per month to pay "necessary and reasonable living expenses." The amount is based on the 2024 Collection Financial Standards published by the IRS (totaling the allowable expenses for Food, Clothing and Other Items; Out-of-Pocket Health Care Expenses; Housing and Utilities, and Transportation). The parties agree the Permitted Funds amount should be an available monthly amount based on Smith's stated monthly rental income of $3,450.00.  Smith's belief is that $3,421.00 is insufficient to pay his family's necessary and reasonable expenses, but he accepts this amount as the current monthly Permitted Funds amount the Government will agree to unfreeze at this time. The parties agree the Permitted Funds amount may be adjusted upon review of Smith's reasonable and necessary expenses not more than once every 30 days. In entering into this Stipulation, Smith reserves all rights to seek judicial review of the Permitted Funds amount at a future date. Accordingly, the Court ORDERS that Smith be granted access to $3,421.00 per month.

**Process:** The parties agree that Smith, via his counsel, has already received access to $6,842.00 from J.P. Morgan Chase Bank account ending in -0995,

11

representing Permitted Funds for two months of Smith's reasonable and necessary expenses from July 18-September 18, 2024. To receive and spend Permitted Funds for additional months, Smith has—with the Court's permission—opened a new bank account in his own name, and has disclosed the account holder (Smith), account number, and routing number thereof to the United States. Furthermore, any Permitted Funds will represent funds from rental income, notwithstanding the fact that they may have come from other sources, and so Smith waives any objection to forfeiture of actual rental income up to the amount of the Permitted Funds, in the event that the Government seeks a forfeiture order.[5] To the maximum extent possible, Permitted Funds disbursed to Smith shall come from sources not derived from potential fraud. The parties will endeavor to reach agreement and submit a stipulated order with a specific source for future disbursements of Permitted Funds.

### III. Miscellaneous Matters

Service of this Injunction may be made by e-mail, mail, facsimile, delivery by law enforcement personnel, courier or process server, or in any other manner authorized by Rule 5 of the Federal Rules of Civil Procedure to inform relevant

---

[5] The Permitted Funds will be accounted for as rental income regardless of their actual source for purposes of this case and any related proceeding, including forfeiture.

persons or entities of the Injunction. The parties stipulate that Smith and the Smith Entities have already been served.

The Court shall retain jurisdiction of this matter for all purposes. Under 18 U.S.C. § 1345(a)(3), no bond or security is required of the United States.

**SO STIPULATED AND AGREED:**

/s/ K. Craig Welkener
K. Craig Welkener (DC 1033585)
Jessica A. Nathan (TX 24090291)
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0248 (Welkener)
(313) 226-9643 (Nathan)
Kenton.Welkener@usdoj.gov
Jessica.Nathan@usdoj.gov

*Attorneys for United States of America*

Dated: January 27, 2025

/s/ Jalen R. Farmer
Matthew Schneider (P62190)
Jalen R. Farmer (P86859)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
mschneider@honigman.com
jfarmer@honigman.com

*Attorneys for Detroit Riverfront Conservancy, Inc.*

Dated: January 27, 2025

/s/ Gerald K. Evelyn
Gerald K. Evelyn (P29182)
Robert E. Higbee (P82739)
409 East Jefferson Ave., Ste. 500
Detroit, MI 48226
(313) 962-3500
geraldevelyn@yahoo.com
robhigbee@gmail.com

*Attorneys for William Anthony Smith and the Smith Entities*

Dated: January 27, 2025

*******************************

**IT IS SO ORDERED.**

Dated: January 28, 2025

s/Susan K. DeClercq
Honorable Susan K. DeClercq
United States District Judge

14